# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**MICHAEL ALONZA RUFUS, #99284-071**                            **PLAINTIFF**

**versus**                            **CIVIL ACTION NO. 5:08cv263-DCB-MTP**

**KATON LEE VARNADO, et al.**                            **DEFENDANTS**

## REPORT AND RECOMMENDATION

This matter is before the court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [38] filed by Defendants. Having reviewed the motion, the entire record in this matter and the applicable law, and thus being fully advised in the premises, the undersigned recommends that Defendants' Motion for Summary Judgment [38] be granted and that this matter be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff Michael Alonza Rufus was convicted of conspiracy to possess and distribute 500 grams or more of cocaine, and "using and carrying a firearm during and in relation to and possessing a firearm during a drug trafficking crime," and on October 17, 2003, was sentenced to concurrent terms of 37 and 60-months by the Honorable Judge Perry in the District of South Carolina. Plaintiff is projected to be released from serving his criminal sentence on July 8, 2010. *See* Exhs. 1 & 2 to Defendants' Motion for Summary Judgment.

This *Bivens*[1] action, filed *pro se* on or about August 11, 2008, arises out of an Incident Report issued to Plaintiff and related disciplinary proceedings conducted while Plaintiff was an

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

inmate at the Federal Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City").[2] Plaintiff has filed suit against the following Defendants who worked at FCC Yazoo City during the relevant time period: Katon Lee Varnado, Correctional Counselor; Omar Docher, Lieutenant; Tricia Moore, Case Manager; Phillip Jackson, Correctional Counselor; and Julia Southerland, Unit Manager. The relevant facts are set forth below.

On or about October 5, 2007, Defendant Varnado was monitoring recorded inmate telephone calls, including a call placed by Plaintiff earlier that evening to a female friend. *See* Exhs. 4 & 5 to Motion for Summary Judgment. During the call, Varnado overheard the woman advise Plaintiff that she had pulled up information regarding the UCC for Mississippi. *See id.* Plaintiff then asked her if she could search electronically in Mississippi, and she said she could. *See id.* Plaintiff then told the woman that he wanted her to spend five dollars and "check on that dude." When asked to whom he was referring, Plaintiff replied "all of them actually, but you to do that dude name K. Varnado." *See id.* Plaintiff then stated that he wanted "to get all those people [sic] social security numbers so that [he could] have them, because about to get ready and take all their sh*t."[3] *See id.* The woman then asked Plaintiff if K. Varnado was black, and Plaintiff replied "no he's not black he's a Nigger." *See id.*

Plaintiff was issued an Incident Report by Varnado on October 16, 2007 charging him with the following offenses: Bureau Disciplinary Code 305, attempted possession of anything not authorized; and Bureau Disciplinary Code 404, using abusive or obscene language. *See*

---

[2] Plaintiff is currently incarcerated at the Federal Correctional Institution in Memphis, Tennessee.

[3] Plaintiff avers that the reason Varnado was monitoring his telephone calls is "because the undersigned has filed a tort claim against him and he will be personally liable for the claim of monetary damages if not paid in full by his 'Principal' and such matter enforced via Uniform Commercial Code remedy for the secured party." *See* Cplt [1] at 5.

*id.* The Report was delivered to Plaintiff on October 17, 2007 by Defendant Omer Docher, a Lieutenant at FCC Yazoo City. *See id.*; *see also* Exh. 7 to Motion for Summary Judgment. A Unit Disciplinary Committee ("UDC") hearing was held the following afternoon, on October 18, 2007, before Defendants Southerland, Moore and Jackson. *See* Exh. 5 to Motion for Summary Judgment. Based upon the recorded telephone call, Plaintiff's statement,[4] and the copy of the UCC search with Varnado's name on it provided by Plaintiff, the UDC found that Plaintiff had committed the charged offenses. *See id.*; *see also* Exhs. 7, 8 & 9 to Motion for Summary Judgment. Plaintiff was sanctioned to 180 days loss of telephone privileges and a change of job assignment. *See* Exh. 5 to Motion for Summary Judgment; *see also* Cplt. & accompanying exhibits. Plaintiff appealed the UDC hearing, arguing that he was not given 24 hours to prepare for his defense. As directed by the results of the appeal, the UDC re-heard the allegations on December 12, 2007, after Plaintiff was given 24-hour notice thereof, and again found Plaintiff in violation of the charged offenses and imposed the same sanctions. *See* Exh. 5 to Motion for Summary Judgment.

Plaintiff alleges that the Incident Report was issued, and disciplinary proceedings were conducted, in violation of his due process rights. Plaintiff further alleges that the UCC search he attempted to undertake "is authorized by law," and that "his comments did not affect the orderly running of the institution." Plaintiff avers that the Incident Report was issued to him in retaliation for his attempt to exercise his right to obtain the social security number of a staff member. Plaintiff also appears to be alleging that Defendants have violated his right to association by preventing him from being transferred to an institution closer to his son. Plaintiff

---

[4] Plaintiff "state[d] individuals [sic] social security numbers are no longer private once they are entered into public record." *See* Exh. 5 to Motion for Summary Judgment.

3

seeks a variety of declaratory and injunctive relief. *See* Cplt [1].

On July 9, 2009, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment [38]. In their Motion, Defendants argue that Plaintiff's claims should be dismissed because: 1) Plaintiff has not established a violation of his constitutional rights; and 2) Defendants are entitled to qualified immunity. On August 20, 2009, when Plaintiff had not responded to the motion, the court entered an Order [41] directing him to respond on or before September 11, 2009; otherwise, Plaintiff was warned, Defendants' motion would be considered and ruled upon without his response. Plaintiff did not file a response.

## STANDARD

Summary judgment[5] shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164

---

[5] Because Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [24], the motion should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).

(5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

### Due Process

"[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297). Accordingly, restrictions or loss of an inmate's telephone privileges - as challenged in the instant case - "provide no basis for a

5

claim of the denial of constitutional rights." *Palmisano v. BOP*, 258 Fed. Appx. 646, at * 2 (5th Cir. Dec. 11, 2007) (citations omitted); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (30 day restriction on commissary privileges did not implicate due process); *Lewis v. Dretke*, 54 Fed. Appx. 795, at * 1 (5th Cir. Dec. 11, 2002) (prisoner's claim challenging restriction of commissary privileges and loss of telephone privileges resulting from allegedly false discipline charges did not implicate due process).

Nor does a change in prison job implicate any due process interest where such action does not "inevitably affect the duration of [the prisoner's] sentence." *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (quoting *Sandin*, 515 U.S. at 487) (cited in *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995)); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 n.3, 1252 (5th Cir. 1989) (holding that a prisoner has no constitutional right to a specific work assignment, and prison officials may transfer prisoners to any job "for almost any reason at all"). Indeed, the Fifth Circuit has explicitly held that "a prisoner does not have a legitimate claim of entitlement to continuing...employment," and, therefore, a...prison job "does not amount to a property interest entitled to due process protection."" *Bulger*, 65 F.3d at 50 (affirming dismissal for failure to state of a claim of prisoner's lawsuit for damages based on removal from prison job).[6]

Accordingly, Plaintiff was not entitled to due process. Moreover, although not entitled, the record demonstrates that, in fact, Plaintiff received due process.

Due process in the context of prison discipline is not the same as due process in the

---

[6] Although Plaintiff does not allege that the job to which he was transferred paid less than his previous job, the court notes that "[g]iven the discretion of prison officials with respect to job assignments and wage determinations," a plaintiff cannot show that a reduction in wages deprived him of a liberty interest. *Guzman v. Hollingsworth*, 231 Fed. Appx. 382 (5th Cir. June 19, 2007); *see also Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir. 1988) ("Whether there is compensation or how much compensation is paid [for work in prison] ... is not a constitutional issue."); *Jennings v. Lombardi*, 70 F.3d 994, 995 (8th Cir. 1995) (holding that inmates do not have property interest in receiving prison wages).

criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Thus, due process is satisfied in prison disciplinary hearings when the inmate receives a finding from an impartial decision maker,[7] and also receives: 1) at least 24 hours advance written notice of the charges; 2) an opportunity to present documentary evidence and testimony from witnesses; 3) help from other inmates or staff, if needed (*e.g.*, if the inmate is illiterate or the charges are complex); and 4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.* at 564-70. The record in this case clearly reflects that Plaintiff received all of these protections.[8] *See*, *e.g.*, Exh. 5 to Defendants' Motion for Summary Judgment.

In addition, in order for a prison disciplinary decision to pass constitutional muster, there merely must be "some evidence" to show that the inmate committed the offense in question. *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445, 455 (1985). The "some evidence" standard is extremely deferential. *See Morgan v. Dretke*, 433 F.3d 455, 457 (5th Cir. 2005). Thus, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. Indeed, even if the evidence is "meager," as long as there is "some evidence" to support the

---

[7] In this regard, the court notes that Defendant Varnado was not a member of the UDC. *See* Exh. 4 to Motion for Summary Judgment.

[8] Indeed, Plaintiff's only allegation of a denial of procedural due process appears to be that he did not receive 24 hours advance notice of the charges prior to the hearing. *See*, *e.g.*, Cplt. at 13. However, as noted *supra*, the UDC re-heard the charges against Plaintiff on December 12, 2007, after Plaintiff was given 24-hour notice thereof. *See* Exh. 5 to Motion for Summary Judgment.

findings of the disciplinary board, its decision must be upheld.[9] *Id.* at 456.

In this case, the UDC relied upon the recorded telephone call, Plaintiff's statement, and the copy of the UCC search with Varnado's name on it provided by Plaintiff. *See* Exhs. 5, 7, 8 & 9 to Motion for Summary Judgment. This is clearly "some evidence" to support the findings of the disciplinary board. *See, e.g.*, *Neal v. Casterline*, 129 Fed. Appx. 113, at * 2 (5th Cir. Apr. 27, 2005) (DHO's report, based on incident report and eyewitness testimony of prisoner counsel, based on "some evidence"); *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001) (an incident report written by officer with first hand knowledge, standing alone, constituted "some evidence" to support prison disciplinary board's finding of guilt); *Nevares v. Sabin*, 2009 WL 1262866, at * 3 (N.D. Tex. May 7, 2009) (correction officer's testimony and inmate's own statement constituted "some evidence" to support decision); *Cruz v. Menifee*, 2007 WL 4589789, at * 3 (W.D. La. Nov. 26, 2007) (DHO's finding, based on reporting officer's eyewitness investigation, satisfied "some evidence" standard).

Based on the foregoing, it is clear that Defendants are entitled to summary judgment on Plaintiff's claims regarding denial of due process during the disciplinary proceedings.

Retaliation claim

Plaintiff alleges that Defendants disciplined him in retaliation for his attempt to exercise his First Amendment right to obtain the social security number of a staff member. The Fifth Circuit has held that in order to state a claim for retaliation,

> a prisoner must allege (1) a specific constitutional right,
> (2) the defendant's intent to retaliate against the prisoner
> for his or her exercise of that right, (3) a retaliatory adverse

---

[9] "The logic behind the Supreme Court's *Hill* standard is that prison disciplinary hearings are set in a uniquely charged atmosphere, in which prison administrators must act swiftly - even if such efficiency is attained by sacrificing the due process protections guaranteed in other settings." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

> act, and (4) causation. The inmate must allege more than
> his personal belief that he is the victim of retaliation. Mere
> conclusionary allegations of retaliation will not be enough
> to withstand a proper motion for dismissal of the claim. The
> inmate must produce direct evidence of motivation or, the
> more probable scenario, 'allege a chronology of events from
> which retaliation may plausibly be inferred.' Further, if the
> inmate is unable to point to a specific constitutional right that
> has been violated, the claim will fail.

*Jones v. Greininger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citations omitted). The inmate must "allege the violation of a specific constitutional right and be prepared to establish that *but for the retaliatory motive* the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (emphasis added). Most importantly, "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, *trial courts must carefully scrutinize these claims*." *Id.* (emphasis added).

Plaintiff has failed to establish a constitutional right. A recent District Court case is instructive on this issue. In *Reeves v. Hogle*, 2006 WL 572708 (W.D. Mich. Mar. 8, 2006), the plaintiff complained that he was being retaliated against by prison officers for his use of their social security numbers in grievance filings. The court rejected the prisoner's argument that his use of the officers' social security numbers was protected conduct, for purposes of a First Amendment retaliation claim, recognizing that "[a] person's social security number is protected as private, non-public information. *See id.* at * 6. The court stated:

> Plaintiff has a First Amendment right to file written grievances
> and pursue lawsuits against MDOC staff...However, plaintiff
> does not have a constitutionally protected right to violate the
> privacy of MDOC staff by using or disseminating their social
> security numbers. The federal government regulates it [sic] own
> use of social security numbers.[10] To allow a prisoner to pursue a

---

[10] *See* Privacy Act of 1974, 5 U.S.C. §442a.

> First Amendment retaliation claim in this court, in order to
> protect the prisoner's 'constitutional right' to intimidate prison
> staff through the unauthorized use of the staff's own social
> security numbers, makes a mockery of the privacy right that all
> individuals possess in their social security numbers.[11]

*See id.* (citations omitted). This court agrees with the reasoning of this case. Accordingly, having failed to establish the violation of a constitutional right, Defendants are entitled to summary judgment on Plaintiff's retaliation claim. *See Jones*, *supra*; *see also McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (noting that retaliation claim must be predicated on the violation of a specific constitutional right).

Moreover, not only has Plaintiff failed to establish a specific constitutional right, but he has provides nothing more than his own conclusory allegations and personal beliefs that he was retaliated against. He provides neither direct evidence of retaliatory motivation, nor does he allege a chronology of events from which retaliation may plausibly be inferred. Plaintiff also does not establish that but for the alleged retaliatory motive, he would not have been found guilty of the disciplinary offense at issue in this lawsuit. Rather, as noted *supra*, the decision of the UDC was supported by "some evidence." Thus, Defendants are entitled to summary judgment on Plaintiff's retaliation claim, as well.

<u>Claims regarding rights of association/transfer</u>

Finally, Plaintiff alleges that Defendants have somehow prevented him from being transferred to a facility closer to his son, thereby violating his right to associate with his son. However, the "right" to associate with his son by being transferred to a facility nearer to him is not a constitutional right. Plaintiff has no constitutional right to be incarcerated in a certain

---

[11] *Cf. Purdy v. Burlington N. & Santa Fe Railway Co.*, 2000 WL 34251818, at * 3-4 (D.Minn. 2000), *aff'd*, 21 Fed. Appx. 518 (8th Cir. Oct. 24, 2001) (enjoining plaintiff from publishing on his website the social security numbers of railroad employees which were mis-delivered to him in an email).

facility, even if life in one prison may be much more disagreeable than in another. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Brown-Bey v. U.S.*, 720 F.2d 467, 470 (7th Cir. 1983)); *see also Steward v. Kelly*, 2006 WL 3825236, at * 4 (N.D. Miss. Dec. 27, 2006); *Hines v. Cain*, 2007 WL 891880, at * 14 (E.D. La. Mar. 20, 2007). Indeed, "it is well settled that under 18 U.S.C. § 3621(b),[12] the Bureau of Prisons may direct confinement in any available facility and may transfer a prisoner from one facility to another at any time." *Ready v. Fleming*, 2002 WL 1610584, at * 3 (N.D. Tex. July 19, 2002). Moreover, a prisoner has "no constitutional right to visitation privileges." *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (citations omitted); *see also Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir. 1985) (prisoners have no constitutional right to physical association with anyone); *Moore v. U.S. Attorney Gen'l*, 473 F.2d 1375, 1376 (5th Cr. 1973) (*per curiam*) (prisoner has no right to be housed near wife and children); *Brown-Bey*, *supra* (prisoner has no right to be transferred closer to friends and family). Accordingly, this claim has no merit.[13]

## RECOMMENDATION

For the reasons stated above, it is the recommendation of the undersigned that

---

[12] "The Bureau of Prisons shall designate the place of the prisoner's confinement. The bureau may designate any available penal or correctional facility that means minimum standards of health and habitability...that the Bureau determines to be appropriate and suitable, considering – (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and character of the prisoner; (4) any statement by the court that imposed the sentence...; and (5) any pertinent policy statement issued by the Sentencing Commission....The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another...."

[13] The court notes that this is not the first time that Plaintiff's request to be transferred to a facility closer to his son has been rejected by this court. In another lawsuit currently pending before the court (Civil Action No. 2:08cv240), Plaintiff has requested, *inter alia*, the same transfer. On May 20, 2009, the court entered a Report and Recommendation [55] in which the court recommended that Plaintiff's request for a transfer, as well as his other claims, be dismissed with prejudice.

Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [38] be granted and that this matter be dismissed with prejudice.[14]

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 29th day of September, 2009.

s/ Michael T. Parker
United States Magistrate Judge

---

[14] Although Defendants have also raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999). Accordingly, having found that Plaintiff's claims are not cognizable as constitutional claims, the court need not reach the question whether Defendants are entitled to qualified immunity. *Wells*, 45 F.3d at 93.